**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GEORGE ARREOLA,

              Plaintiff,

    v.

NANCY BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

           Defendant.

Case No. CV 16-07224 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

    George Arreola ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. <u>See</u> 42 U.S.C. § 405(g).

Administration (the "Commissioner" or "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 9-10). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On July 2, 2012, Plaintiff filed an application for DIB. (Administrative Record ("AR") 180-183). Plaintiff alleged that he became unable to work on August 27, 2011 due to right/left rotator cuff syndrome/joint pain and closed dislocation of acromioclavicular joint. (AR 196). The Agency denied Plaintiff's application on January 9, 2013. (AR 100-103). On May 29, 2013, the Agency denied Plaintiff's application upon reconsideration. (AR 105-108). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On August 19, 2014, ALJ Michael Kopicki conducted a hearing to review Plaintiff's claim. (AR 50-80). The ALJ continued the hearing so that Plaintiff could be evaluated by an orthopedic consultative examiner. (AR 78-79, 569). On April 16, 2015, the ALJ held a supplemental hearing. (AR 26-49). On June 16, 2015, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 8-24). On June 19, 2015, Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 5-7). The Appeals Council denied Plaintiff's

request on August 23, 2016.  (AR 1-3).  The ALJ's decision then became the final decision of the Commissioner.  Plaintiff commenced the instant action on September 26, 2016.  (Dkt. No. 1).

### III.

### FACTUAL BACKGROUND

Plaintiff was born on May 29, 1957.  (AR 55).  He was 54 years old as of the alleged disability onset date of August 27, 2011. He was 57 years old when he appeared before the ALJ.  (Id.). Plaintiff completed the twelfth grade.  (Id.).  From 1981 to 2011, Plaintiff worked as a truck driver.  (AR 197).

### A. Plaintiff's Testimony

Plaintiff testified that he lives with his wife in their house.  (AR 54).  His wife has four dogs.  (AR 64).  He stated that his current source of income is his retirement.  (Id.).  He stated that he receives $2,199 a month.  (Id.).  He pays $530.03 for health insurance.  (AR 54-55).  Plaintiff also owns a rental building, which was unoccupied at the time of the hearing.  (AR 55).  Plaintiff stated that he has one daughter, who was around 39 years old at the time of the hearing.  (Id.).  Plaintiff also stated that he has three or four grandkids.  (AR 64).  However, he does not really see them.  (Id.).

Plaintiff testified that he last worked on August 27, 2011.

(AR 55). He had been driving a tractor-trailer truck for Hostess, making baked goods deliveries in Arizona. (AR 32, 56). Plaintiff worked for Hostess for about 31 years. (AR 34). He testified that, in his best year, he made almost $85,000 to $90,000. (Id.). Plaintiff stopped doing this job because he had a motorcycle accident. (Id.). Plaintiff stated that he cannot recall the whole accident. (Id.). He testified that a witness "said a car cut the car in front of [him] that [he] was following, and then [he] hit [his] brakes" and lost control. (AR 57). Plaintiff testified that he injured his shoulders. (AR 56, 57). After the accident, Plaintiff decided to exercise his option for early retirement. (AR 56).

Plaintiff testified that he has to sleep on his back. (AR 58). In the morning, he will feel either one of his shoulders throbbing. (Id.). The pain subsides once he has been up for a little bit. (Id.). If he does not do anything, he will not have pain throughout the course of the day. (AR 59). Activities involving pushing, such as cutting the grass, hurt him. (Id.). Plaintiff stated that he is weaker since he stopped working because he has partial tears in his shoulders and does not want to put stress on them. (AR 60). Plaintiff stated that he is not currently on treatment for his shoulders. (Id.). He is not taking any medication or going to physical therapy for his shoulders. (Id.).

Plaintiff also testified that he was diagnosed with sleep apnea around 2011. (AR 36, 60). He stated that he was provided

with a Continuous Positive Airway Pressure ("CPAP") machine. (AR 60). However, the machine "doesn't feel good." (Id.). Plaintiff thinks the CPAP machine makes him even more tired. (Id.). He testified that he wakes up at four in the morning and has to remove it. (Id.). Plaintiff stated that he does not think he benefits from the CPAP machine. (AR 37). Plaintiff testified that he has had the sleep problems for a while. (AR 60-61). Plaintiff stated that he will sometimes nap for two or three hours. (AR 62).

Plaintiff testified that, on a normal day, he wakes up, walks for two or three hours, returns home and naps. (AR 62). He stated that when he is walking, he is looking for people who might want to talk with him about the Bible. (AR 37). After his nap, he "piddle[s]" around the house and cleans up. (AR 62). Plaintiff testified that he washes dishes, rakes leaves, and takes out the trash. (AR 63). He stated that he also mows the yard. (Id.). If his arms or shoulders get tired, he rests and comes back to finish. (Id.).

Plaintiff testified that he used to fix up old cars, but can no longer afford to. (AR 64). Plaintiff testified that when he is driving he switches from one arm to the other because of his shoulder pain. (AR 65). He stated that he once picked up two or three bags of dog food, weighing fifty pounds each, and was hurting for the next three or four days. (Id.).

Plaintiff testified that he is "okay" walking. (AR 66). He stated that he has flank pain when he sits for a while that he needs to massage. (Id.). Plaintiff stated that he had been doing

shoulder exercises with physical therapy, but MRIs showed tears and he was instructed to stop the exercises.  (AR 68).

At his second hearing, Plaintiff testified that he bought $200 worth of supplements, including powders for inflammation.  (AR 38). He stated that he thought the supplements were "keeping [him] at bay."  (Id.).  He also stated that he was not seeing any physicians for his shoulders because he was keeping things "at bay."  (AR 39). Other than his supplements and back-up Ibuprofen, Plaintiff stated that he is not taking any medication.  (Id.).

**B. Consultative Examiner, Dr. Warren Yu**

On November 1, 2014, orthopedic surgeon Dr. Warren Yu, M.D., conducted a complete orthopedic consultation of Plaintiff.  (AR 569-583).  Dr. Yu also reviewed MRI reports of both of Plaintiff's shoulders.  (AR 569).  Dr. Yu stated that the MRIs noted partial rotator cuff tear with an old grade 1 AC joint injury on the right side.  (Id.).

Under "Shoulders," Dr. Yu noted that Plaintiff has tenderness of both AC joints.  (AR 571).  He stated that there was no gross deformity.  (Id.).  He noted that Plaintiff "has full range of motion of both shoulders."  (Id.).  He further noted that Plaintiff has "positive impingement 1 and 2 signs of both shoulders.  Negative Jobe's testing.  No atrophy.  Negative liftoff test."  (Id.).

Under "Clinical Impression," Dr. Yu noted that Plaintiff "is

able to push and pull with his upper extremities on a frequent basis." (AR 572). Dr. Yu commented that "[o]verhead reaching can be done frequently, bilaterally." (AR 573). Dr. Yu stated that Plaintiff is able to "lift and carry 50 pounds occasionally and 25 pounds frequently." (AR 572). However, on a corresponding Medical Source Statement (MSS), Dr. Yu checked off boxes indicating that Plaintiff could only lift and carry "11 to 20 lbs" occasionally and "up to 10 lbs" frequently. (AR 574).

On December 15, 2014, the ALJ contacted Dr. Yu requesting that he clarify his conflicting opinions. (AR 251). On December 23, 2014, Dr. Yu responded, confirming that Plaintiff could lift and carry "50 pounds occasionally and 25 pounds frequently." (AR 582). He stated that he "mistakenly marked the wrong boxes on the MSS forms." (Id.).

On January 21, 2015, Plaintiff's counsel wrote to the ALJ requesting a supplemental hearing. (AR 266). Plaintiff's counsel also requested that the ALJ subpoena Dr. Yu to that hearing. (Id.). The ALJ denied Plaintiff's request to subpoena Dr. Yu to the supplemental hearing. (AR 178).

## C. State Agency Reviewing Physicians

### 1. V. Phillips, M.D.

On January 8, 2013, State Agency reviewing physician, V.

Phillips, M.D., reviewed Plaintiff's medical records and provided a medical assessment. (AR 84-86). Dr. Phillips opined that Plaintiff could occasionally lift and/or carry 50 pounds. (AR 85). He also opined that Plaintiff could frequently lift and/or carry 25 pounds. (Id.). Dr. Phillips opined limitations in both upper extremities for pushing and pulling. (Id.). Dr. Phillips elaborated that Plaintiff should avoid "frequent push/pull activities involving the BUE = OCC." (Id.). Dr. Phillips opined occasional "overhead reaching involving the [bilateral upper extremities] ABOVE CHEST LEVEL." (AR 86).

### 2. Murari Bijpuria, M.D.

On May 29, 2013, State Agency reviewing physician, Dr. Murari Bijpuria, M.D., reviewed Plaintiff's medical records and provided a medical assessment. (AR 95-96). Dr. Phillips opined that Plaintiff could occasionally lift and/or carry 50 pounds. (AR 95). He also opined that Plaintiff could frequently lift and/or carry 25 pounds. (Id.). Dr. Bijpuria opined limitations in both upper extremities for pushing and pulling. (Id.). Dr. Bijpuria elaborated that Plaintiff should avoid "frequent push/pull activities involving the BUE = OCC." (AR 95). Dr.

Bijpuria opined occasional "overhead reaching involving the [bilateral upper extremities] ABOVE CHEST LEVEL." (AR 96).

### D. Medical Records Regarding Sleep Apnea

8

On July 29, 2013, Plaintiff visited physicians at Kaiser Permanente. (AR 499). At this visit, Plaintiff requested an evaluation for sleep apnea. (Id.). On August 26, 2013, medical records indicate that a sleep study revealed evidence of a sleep related breathing disorder. (AR 512). These records note that CPAP titration was done and Plaintiff tolerated it well. (Id.). Medical records from August 28, 2013 state that Plaintiff was "tested to rule out Obstructive Sleep Apnea." (AR 522). The records go on to note that the "diagnostic portion of the study indicates Mild Obstructive Sleep Apnea (OSA)". (Id.).

**E. Vocational Expert Testimony**

**1. Carmen Roman**

Vocational Expert ("VE") Carmen Roman testified at Plaintiff's first hearing before the ALJ. (AR 69-78). The VE testified that Plaintiff's past work as a tractor-trailer truck driver (DOT 904.383.010) classified as medium, SVP 4. (AR 69). She stated that records indicate Plaintiff lifted up to a hundred pounds, in which case the job would have been performed at the heavy level. (Id.).

The ALJ asked the VE to consider a series of factors in creating a hypothetical for determining Plaintiff's ability to work. (AR 69-70). The ALJ's hypothetical included a person with certain postural limitations. (Id.). VE Roman testified that the hypothetical individual could do Plaintiff's past work as a

tractor-trailer truck driver as it is generally performed, but not as Plaintiff actually performed it.  (AR 70).

The ALJ then introduced vocational factors to the hypothetical. (AR 70). VE Roman testified that she could identify work consistent with the described limitations and vocational factors, including industrial cleaner (DOT 381.687-018, medium, SVP 2, one million jobs in national economy), linen room attendant (DOT 222.387-030, medium, SVP 2, 1.7 million jobs in national economy), and food service worker (DOT 319.677-014, medium, SVP 2, 200,000 jobs in national economy).  (AR 70-71).

The ALJ then asked the VE to consider that the hypothetical individual needed to nap for several hours around lunchtime every day.  (AR 72).  The VE testified that this would not be tolerated in any of the jobs mentioned.  (AR 73).

### 2. Elizabeth Brown-Ramos

VE Elizabeth Brown-Ramos testified at Plaintiff's second hearing before the ALJ.  (AR 40-48).  The VE testified that Plaintiff's past work as a truck driver classified as DOT 905.663014, medium, SVP 4, semi-skilled.  (AR 40-41).  The VE testified that there are no acquired work skills that would transfer with little or no adjustment to light work. (AR 41). The ALJ asked the VE to consider a series of factors in creating a hypothetical for determining Plaintiff's ability to work.  (AR 41-42).  The VE testified that the hypothetical individual would be

capable of performing Plaintiff's past work.  (AR 41-42).

The ALJ added an additional postural restriction of overhead reaching from chest level up.  (AR 42).  The VE testified that an individual with this restriction could not perform Plaintiff's past work.  (AR 43).  The VE testified that the restriction would also eliminate linen room worker and food service worker.  (AR 44).  The VE stated that work as an industrial cleaner (DOT 381.687-018, 200,000 jobs in the national economy) could still be done within the restrictions.  (Id.).  The VE also stated that work as a factory helper (DOT 529.686-034, medium, SVP 2, 68,000 jobs in the national economy) and machine packager (DOT 920.685-078, medium, SVP 2, 120,000 jobs in the national economy) could still be done within the restrictions.  (AR 46).  The VE stated that an individual who needed to take breaks amounting to ten percent of the workday would not be able to do these jobs.  (AR 47-48).

## IV.

### THE FIVE STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715,

---

[2]    Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1520, 416.910.

721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one on the list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not,

   the claimant is found disabled.  If so, the

   claimant is found not disabled.


Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R.
§§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).


    The claimant has the burden of proof at steps one through four
and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant
meets his burden of establishing an inability to perform past work,
the Commissioner must show that the claimant can perform some other
work that exists in "significant numbers" in the national economy,
taking into account the claimant's residual functional capacity
("RFC"), age, education, and work experience.  Tackett, 180 F.3d
at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§
404.1520(f)(1), 416.920(f)(1).  The Commissioner may do so by the
testimony of a vocational expert or by reference to the Medical-
Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,
240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).  When a
claimant has both exertional (strength-related) and nonexertional
limitations, the Grids are inapplicable and the ALJ must take the
testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864,
869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

On June 16, 2015, after employing the five-step sequential evaluation process, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 20).

At step one, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since August 27, 2011, the alleged onset date. (AR 14).

At step two, the ALJ found that Plaintiff's severe impairments were degenerative joint disease of the bilateral shoulders and history of left scapula fracture. (Id.).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925-26). (AR 15).

The ALJ then found that Plaintiff had the following RFC:

> [H]e can lift and carry fifty pounds occasionally and twenty-five pounds frequently; he can stand and walk, with normal breaks, for six hours in an eight-hour workday; he can sit, with normal breaks, for six hours in an eight-hour workday; he can frequently push and pull with bilateral

upper extremities; he can occasionally climb ladders, ropes, and scaffolds; he can occasionally crawl; and he can perform no more than occasional overhead reaching (defined as above-the-chest and above-the-shoulder reaching) with the bilateral upper extremities.

(Id.).

In arriving at his conclusion, the ALJ relied primarily on the opinions of the State Agency physicians. (Id.). The ALJ found these opinions to be consistent with the objective treatment records and with the opinion of the consultative examiner, Dr. Yu. (Id.). The ALJ also gave substantial weight to Dr. Yu's opinion. (Id.). The ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effect of his symptoms was "not entirely credible." (AR 17).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (AR 18). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 19).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Auckland v. Massanari, 257 F.3d 1033, 1035

(9th Cir. 2001) (citing Tackett, 180 F. 3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

## DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff contends that the ALJ failed to properly evaluate the medical evidence. (Memorandum in Support of Plaintiff's Complaint ("Pl. MSO") at 3). Second, Plaintiff contends that the ALJ failed to properly evaluate his testimony. (Id. at 7).

16

The Court disagrees. The record demonstrates that the ALJ conducted a thorough and proper analysis of both the medical evidence and Plaintiff's testimony. Accordingly, for the reasons discussed below, the Court finds that the ALJ's decision must be AFFIRMED.

## A. **The ALJ Properly Assessed The Medical Evidence**

Plaintiff argues that the ALJ erred in (1) giving substantial weight to Dr. Yu's opinion (Pl. MSO at 3-5); (2) denying Plaintiff the opportunity to amend his subpoena request (Id. at 4-5); and (3) rejecting Plaintiff's obstructive sleep apnea as a severe impairment. (Id. at 5).

### 1. **Dr. Warren Yu**

Plaintiff contends that Dr. Yu's opinion is "effectively, the entire basis for the [ALJ's] decision." (Pl. MSO at 5). Plaintiff contends that the ALJ erred in affording substantial weight to Dr. Yu's opinion. (Id.). Specifically, Plaintiff argues that Dr. Yu's medical report is unreliable and "as such, is not substantial evidence." (Id.).

As a threshold matter, the Court disagrees with Plaintiff's argument that Dr. Yu's opinion is, "effectively, the entire basis for the decision." (Pl. MSO at 5). The ALJ's decision contains a detailed and thorough summary of all of the medical evidence

documented in the record.  (AR 15-18).  Pursuant to this summary,
the ALJ balanced the evidence according to its reliability and
consistency with other evidence.  The ALJ stated that he based his
RFC assessment "primarily on the opinions of the State Agency
physicians who found the claimant capable of a reduced range of
medium work [].  [He found] these opinions to be consistent with
that of the consultative examiner, Dr. Yu [], and the objective
treatment records."  (AR 15).

    While the ALJ noted that he adopted the State Agency opinions
for the most part, he did not adopt their occasional pushing and
pulling limitations.  (AR 16).  Instead, he found Dr. Yu's
limitation to be more consistent with the longitudinal treatment
records.  (Id.).  Specifically, in reviewing the record, the ALJ
took note of the fact that, by "May 24, 2012, [Plaintiff] displayed
full strength with impingement signs and good range of motion."
(AR 16).  He noted that, though Plaintiff complained in September
of 2013 of left shoulder pain, "he had full strength and good range
of motion on examination."  (AR 16).

    In his Reply Brief, Plaintiff argues that if "Dr. Yu's opinion
were not ultimately determinant of the decision, there would have
been no need to get his answer about which of his conflicting
exertional limitations he intended."  (Plaintiff's Reply ("Pl.
Rep.") at 2).  The Court disagrees.  In order for an ALJ to make a
proper determination, it is paramount that he evaluates the entire
record.  It is equally important for the ALJ to resolve any
conflicts in the evidence so that he can appropriately consider
all evidence.

To support his argument that Dr. Yu's opinion is unreliable and should not have been granted substantial weight, Plaintiff references Dr. Yu's incorrect comment that Plaintiff "last worked as a construction laborer up until 1979." (Pl. MSO at 3, AR 570). Plaintiff also points to the fact that Dr. Yu accidentally dated his evaluation "November 1, 2013" instead of November 2014. (Pl. MSO at 3, AR 569). Plaintiff similarly refers to his testimony that Dr. Yu stated "so you have pain in your back. I said, no, it's not my back, it's my shoulders." (Pl. MSO at 3, AR 33). He also points to the discrepancy between Dr. Yu's narrative report and his MSS regarding how much Plaintiff could lift and carry. (Pl. MSO at 4). Plaintiff calls these mistakes a "collection of misinformation/errors from Dr. Yu." (Id.).

First, regarding Dr. Yu's mistaken identification of Plaintiff's past employment, incorrect evaluation date, and his initial misunderstanding about the location of Plaintiff's pain, such alleged mistakes are irrelevant to the substance of his opinion. There is no support for Plaintiff's assertion that these minor errors rendered Dr. Yu's entire exam as unreliable.

Second, the ALJ properly considered and resolved the inconsistency in Dr. Yu's report regarding lift/carry limitations. (AR 16, 18). Plaintiff argued at the supplemental hearing that conflicts in Dr. Yu's opinion should be resolved in favor of the checkbox limitations. (AR 29-30). However, the ALJ contacted Dr. Yu to clarify the inconsistency regarding lift/carry limitations.

(AR 251, 581).  As the ALJ noted, "Dr. Yu clarified and confirmed that the limitations should be fifty pounds occasionally and twenty-five pounds frequently."  (AR 16).  Thus, Dr. Yu properly resolved his opinion about Plaintiff's functional limitations.

Therefore, the ALJ provided a reasoned and thorough explanation for affording substantial weight to Dr. Yu's opinion. He appropriately reconciled any inconsistencies in Dr. Yu's opinion and his analysis is well-supported by the record.

### 2. Subpoena Request

Plaintiff argues that, based on the "collection of misinformation/errors from Dr. Yu, and the dubious proposition that he could remember his opinion from a brief examination seven weeks prior, []counsel wrote to the ALJ requesting a supplemental hearing and that Dr. Yu be subpoenaed to that hearing."  (Pl. MSO at 4). On April 16, 2015, the ALJ held a supplemental hearing.  (AR 26-49).  However, the ALJ denied Plaintiff's request to subpoena Dr. Yu.  (AR 178).  The ALJ stated that Plaintiff failed to adhere to regulations requiring that he "state the important facts that the witness is expected to prove, and indicate why these facts could not be proven without issuing a subpoena."  (Id.). Plaintiff argues that the ALJ did not give him an opportunity to amend his subpoena. (Pl. MSO at 4).  Plaintiff asserts that not having "a chance to question Dr. Yu had the effect of denying Plaintiff basic due process."  (Id.).

As the ALJ noted, a claimant requesting a subpoena must "state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). As an administrative proceeding, Social Security hearings are non-adversarial and the Federal Rules of Evidence do not apply. Bayliss v. Barnhart, 427 F.3d 1211, 1218 n. 4 (9th Cir. 2005). A claimant is entitled to "such cross-examination as may be required for a full and true disclosure of the facts." See Solis v. Schweiker, 719 F.2d 301, 302 (9th Cir. 1983) (quoting 5 U.S.C. § 556(d)). The ALJ has discretion to decide when cross-examination is warranted. Copeland v. Bowen, 861 F.2d 536, 539 (9th Cir. 1988).

Here, the ALJ denied Plaintiff's subpoena request because Dr. Yu had already clarified the only relevant error in his evaluation. Plaintiff failed to demonstrate any other substantial need for Dr. Yu's appearance. In other words, because Dr. Yu's records had been fully reconciled, Plaintiff could not establish that Dr. Yu's testimony was either essential or unobtainable by other means. Moreover, Plaintiff has not demonstrated that cross-examination of Dr. Yu was "required for a full and true disclosure of the facts." Id. Plaintiff's suggestion that Dr. Yu's clarification is unreliable because it is dubious that he "could remember his opinion from a brief examination seven weeks prior" is pure speculation. For these reasons, the ALJ did not err in denying Plaintiff's request for a subpoena nor did the ALJ deny basic due process to Plaintiff.

### 3. Sleep Apnea

Plaintiff next argues that the ALJ erred in rejecting his alleged "obstructive sleep apnea as a severe impairment." (Pl. MSO at 5). Specifically, Plaintiff argues that:

> [t]he record provides a diagnosis of obstructive sleep apnea. Plaintiff testified to needing to nap daily during the day. He is not required to prove his claim beyond a reasonable doubt. It must be more probable than not. People who are not tired do not generally take pointless naps as a way of luxuriating in their retirement. The evidence establishes a basis for Plaintiff's complaints of tiredness, and the decision's dismissing of that impairment out of hand unjustifiably amputates a substantive aspect of Plaintiff's disability claim.

(Id. at 6).

The ALJ did not err in his finding. First, the ALJ appropriately determined that the record fails to establish Plaintiff's alleged sleep apnea causes a significant limitation in his ability to perform basic work activities. As the ALJ pointed out, "[a]lthough the [plaintiff] testified that he could not tolerate the CPAP titration, the record reflects that, at least at one point, he tolerated it well." (AR 14, 512). Moreover, the ALJ appropriately determined that the evidence of record did not provide "a direct link establishing that the [plaintiff's] naps are caused by sleep apnea or that they are even required." (AR 14).

Additionally, the ALJ concluded that the record contains "little, if any, in the way of notations describing the [plaintiff] as tired or fatigued. The record also contains little, if any, follow-up treatment for sleep apnea. In fact, by August 28, 2013, the [plaintiff's] doctor reported that the diagnostic portion of the [plaintiff's] sleep study indicated only mild obstructive sleep apnea." (Id.).

The ALJ reasonably concluded that Plaintiff's alleged sleep apnea was non-severe. Because the ALJ's conclusions regarding sleep apnea were reasonable, the Court should not disturb them. See Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**B. The ALJ Provided Specific, Clear, And Convincing Reasons For Rejecting Plaintiff's Testimony**

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective testimony. (Pl. MSO at 7). Specifically, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms. (Id. at 8). The Court disagrees and finds that the ALJ properly evaluated the credibility of Plaintiff's testimony.

When assessing a claimant's credibility regarding subjective

pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Initially, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id. (citation omitted). If such evidence exists, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted). In so doing, the ALJ may consider the following:

> [One,] [the] ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [two,] [the] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and [three,] the claimant's daily activities.

Smolen, 80 F.3d at 1284 (brackets added); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony." Tommasetti, 533 F.3d at 1039 (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing Fair, 885 F.2d at 604).

Here, the ALJ stated that he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 17). The ALJ cited several reasons for finding that Plaintiff's allegations are not fully credible.

First, objective evidence contradicted Plaintiff's allegations. For example, in July of 2012, less than one year after his motorcycle accident, a physician's assistant (PA) opined that Plaintiff was "ok to return to normal activities as tolerated." (AR 17, 476). The PA also indicated that Plaintiff's work restrictions would be lifted at the end of June 2012, stating "[a]t that time can return to work without restrictions or will place him on permanent work restrictions." (Id.). The PA stated that "the only way to see if he can do his job duties is to actually attempt to perform them." (Id.). However, the ALJ noted that Plaintiff did not attempt performing his work duties. (AR 17). Indeed, Plaintiff has not worked since August 2011. (Id.). The ALJ also noted that the record does not contain a follow-up with this medical source. (Id.).

Moreover, the ALJ noted that "no examining or reviewing physician has rendered an opinion fully supporting the claimant's allegations. In fact, several find him to be much more capable than he claims." (Id.). Plaintiff reported that his doctors told him to stop physical therapy and "not to do any exercise once they

saw partial tears on the MRI." (AR 18). The ALJ determined that these statements were not corroborated by the record. (Id.). The ALJ further stated that, during the April 2015 hearing, Plaintiff referred to his mowing the lawn as exercise. (AR 18). The ALJ noted that this contradicts Plaintiff's assertions that he was told not to exercise. (Id.).

The ALJ also noted that Plaintiff managed his alleged pain conservatively. Conservative treatment can diminish a plaintiff's credibility regarding the severity of an impairment. See Parra v. Astrue, 481 F.3d 742, 750—51 (9th Cir. 2007); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (Claimant's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995) (ALJ properly concluded claimant's excess pain testimony was not credible because, among other reasons, claimant's treating physician prescribed only conservative treatment, "suggesting a lower level of both pain and functional limitation").

Here, the ALJ stated that Plaintiff's representative "asked [Plaintiff] about pain and [he] responded that he was pretty much managing the pain and was not takin[g] pain medications." (AR 18). The ALJ noted that, absent a November 2013 incident,

> there are no records describing exacerbations of shoulder pain … even during the November 2013 incident only conservative measures were recommended (despite the descriptions of 10/10 paint) and a week later the symptoms were largely resolved. Afterwards, there [were] hardly any

indications of treatment even though [Plaintiff] does have ready access to care.

(Id.).  In his Reply Brief, Plaintiff argues that "[c]onservative treatment, or lack of treatment, do not necessarily equate with lack of a medical problem.  There are multiple acceptable ways for a patient to deal with medical impairments."  (Pl. Rep. at 4).  While Plaintiff's assertion may be correct, its application here is misplaced.  The ALJ appropriately determined that Plaintiff's allegations of disabling pain were inconsistent with his failure to seek out medication or physical therapy.  The ALJ also properly determined that Plaintiff's allegations conflicted with evidence that his pain was easily managed with minimal care.

The ALJ also noted that, during the hearings, Plaintiff moved his arms easily with no outward manifestations of discomfort.  (AR 18).  Moreover, the ALJ took into consideration the fact that Plaintiff stated in his Disability Report-Appeal that he is able to care for himself, but is careful when reaching above and behind his back.  (AR 18, 225).  These findings offer further support for the ALJ's credibility determination.

In sum, there are legally sufficient, record-based reasons for the ALJ to have declined to credit Plaintiff's subjective statements in their entirety.  For these reasons, the ALJ's ultimate determination to reject Plaintiff's subjective testimony was not error.

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  June 14, 2017

                                    /S/
                          _____
                          SUZANNE H. SEGAL
                          UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**